IN THE CIRCUIT COURT OF THE SECOND JUDCIAL DISTRICT
OF HARRISON COUNTY, MISSISSIPPI

JAMES BARNEY FOSTER, AS HEIR OF
ATHA FOSTER AND ON BEHALF OF THE
HEIRS OF ATHA FOSTER                                              PLAINTIFF

VERSUS                                                                            A 2402-2008-284

STATE FARM FIRE & CASUALTY COMPANY                    DEFENDANT



## COMPLAINT

COME NOW, James Barney Foster ("Plaintiff"), individually and on behalf of the heirs of Atha Foster, deceased, and files this Complaint against Defendant State Farm Fire & Casualty Company ("State Farm") and alleges as follows:

### PARTIES

1. Plaintiff is a permanent resident of Harrison County, Mississippi, residing at 156 Briarfield Avenue, Biloxi, Mississippi, 39531. Plaintiff is the son of Atha Foster and is one of the heirs of Atha Foster and brings suit on behalf of Atha Foster and the heirs of Atha Foster.

2. Defendant State Farm Fire & Casualty Company is a corporation organized and existing under the laws of the State of Illinois, with its principal office and place of business located at One State Farm Plaza, Bloomington, Illinois, 71701-0001. State Farm also may be served with process in Mississippi by service on its agent for service of process, Mr. William E. Penna, 1080 River Oaks Drive, Suite B-100, Flowood, Mississippi, 39232-7644.

### JURISDICTION

3. This Court has subject matter jurisdiction pursuant to Art. VI, § 156 of the Mississippi Constitution and MISS. CODE ANN. § 9-7-81.

4.      This Court has personal jurisdiction over State Farm because State Farm is a corporation engaged in the insurance business in Mississippi and licensed to do business therein by the Mississippi Insurance Department. Further, as mentioned above, State Farm has appointed an agent for service of process in Mississippi, William E. Penna, 1080 River Oaks Drive, Suite B-100, Flowood Mississippi, 39232-7644.

## VENUE

5.      Venue in this action is proper in Harrison County, Mississippi, pursuant to MISS. CODE ANN. § 11-11-3, because this suit concerns real and personal property located exclusively in Harrison County, Mississippi, and the conduct, acts and/or omissions upon which this action is based occurred and accrued in Harrison County, Mississippi.

## STATEMENT OF FACTS

6.      Atha Foster purchased Homeowners Insurance Policy No. 24-68-5890-4 from State Farm (the "Policy"). The Policy provides comprehensive coverage for the home where Atha Foster resided at 150 Pine Grove Avenue, Biloxi, Mississippi, 39531-4813. The coverage period for the Policy in place at the time of Atha Foster's loss ran from June 16, 2005 to June 16, 2006.

7.      The Policy insures for "accidental direct physical loss" to Atha Foster's property. Atha Foster's Policy covers his personal property, dwelling and "dwelling extension," which the Policy defines as "other structures on the residence premises, separated from the dwelling by clear space."

8.      For such coverage, Atha Foster agreed to pay and did pay State Farm an annual premium. State Farm accepted the benefits of the premium paid by Atha Foster. Atha Foster performed all of his duties and obligations with regard to the Policy.

9. On August 29, 2005, while the Policy was in full force and effect, Atha Foster's home was severely damaged by wind and wind-driven rain from Hurricane Katrina, a hurricane with sustained winds in excess of 150 miles per hour. The hurricane caused two trees to fall on Atha Foster's residence, destroying the roof and rendering the house uninhabitable. The hurricane also destroyed almost all of the personal property inside Atha Foster's residence and a tool shed located on the property.

10. On or about September 2005, Atha Foster notified State Farm of the covered loss. State Farm, however, did not send an adjuster to Atha Foster's home until October 20, 2007, more than a month after Atha Foster reported the loss.

11. State Farm never sent an engineer to complete an engineering evaluation of the property or to inspect the remains of the residence. Instead, on December 14, 2005, Cindy Bootler, working in her capacity as a claims adjuster for State Farm, provided Atha Foster with a Statement of Loss. Because State Farm's inspection grossly underestimated the value of the property, Atha Foster requested that State Farm perform a second assessment.

12. Atha Foster was forced to wait more than six months after incurring the hurricane-related damages before State Farm provided him with a revised Statement of Loss on February 27, 2006. Furthermore, it was not until May 15, 2007, that State Farm provided Atha Foster with the final estimate for home and dwelling damage and contents inventory summary.

13. By letter dated December 30, 2005, Angela Adame of State Farm offered payment of $30,709.51 for the "actual cash value" of Atha Foster's personal property. The letter noted that Atha Foster's Policy "provides replacement cost for personal property items" as long as Atha Foster replaces the items and sends his receipts to State Farm.

14. Atha Foster's Policy entitles him to up to $69,750 of coverage for his personal property, including the contents of his home. Although Atha Foster has since replaced much of his personal property and documented his replacement costs, State Farm refused to pay Atha Foster the amounts to which he is entitled under the Policy.

15. In or about December 2007, State Farm paid Atha Foster $31,326.63 for damage to his home and a tool shed on his property. By letter dated August 7, 2008, State Farm confirmed payment and further alleged that "[t]here was also a substantial amount of flood damage which is not covered under the . . . policy." *See* letter attached as Exhibit A. But as demonstrated by the physical evidence, the destruction to Atha Foster's home was caused by wind, not flooding.

16. Atha Foster's Policy entitles him to up to $93,000 for his house and an additional $9,300 for other buildings on his property.

17. Atha Foster repaired much of the property damage to his home and tool shed and provided detailed documentation to State Farm. Nonetheless, State Farm continues to refuse to pay Atha Foster up to the $93,000 available under the Policy for the wind damage caused to Atha Foster's home and the additional $9,300 for the damage caused to other buildings on the property.

18. As a result of this loss, Atha Foster was forced to vacate his home for 2 ½ years while he waited for State Farm to pay his claim. Atha Foster and his wife spent several months living in a converted carport. Atha Foster spent the remainder of this period living in a FEMA trailer.

19. Up until his death on September 26, 2008, Atha Foster experienced extreme mental anguish as a result of State Farm's failure to provide him payment for his loss within a

reasonable time after being notified of Atha Foster's loss. Atha Foster's wife, Elizabeth, also passed away several months ago after suffering from many months of stress and anguish produced by the anxiety of being unable to rebuild her home. Up until his death, Atha Foster relied on numerous medications prescribed to help alleviate the stress-related symptoms he experienced following the hurricane.

20. State Farm has abandoned its duty to fully and completely investigate Atha Foster's claim and its duty to provide indemnification in accordance with the terms and conditions of the Policy.

## COUNT ONE: BREACH OF CONTRACT

21. Plaintiff incorporates and adopts by reference each allegation in Paragraphs 1 through 20 of this Complaint.

22. Atha Foster entered into a valid and binding contract with State Farm by which he purchased and was entitled to receive full insurance coverage under the Policy for the damage to the insured property and loss of use caused by Hurricane Katrina.

23. Inherent in any insurance contract is the promise that payment must be made promptly so the insured may mitigate his damages and be put back into the position he or she was in prior to the loss.

24. State Farm breached the Policy by failing to conduct an adequate, proper, honest and good faith adjustment and investigation of Atha Foster's claims for damage.

25. State Farm breached the Policy by failing to pay Atha Foster the full amount to which he is entitled for this loss.

26. State Farm's breaches of contract have proximately caused Atha Foster's damages.

## COUNT TWO: BREACH OF GOOD FAITH AND FAIR DEALING

27. Plaintiff incorporates and adopts by reference each allegation in Paragraphs 1 through 26 of this Complaint.

28. State Farm had a duty of good faith and fair dealing to Atha Foster.

29. State Farm lacked an arguable or legitimate basis for denying Atha Foster's claim.

30. In particular, State Farm breached its duty of good faith and fair dealing to Atha Foster by:

   (a) unjustifiably denying coverage to Atha Foster for the damages to the insured property and loss of use caused by Hurricane Katrina;

   (b) failing to conduct a proper, adequate, honest and good-faith investigation and adjustment of Atha Foster's claim after the storm;

   (c) failing to provide Atha Foster with adequate justification for denying complete coverage;

   (d) refusing to promptly settle Atha Foster's claim, as required under the Policy, taking advantage of Atha Foster by delaying his case in an attempt to force him to litigate or accept an inadequate settlement and causing Atha Foster to experience personal and economic hardship; and

   (e) failing to construe the Policy in favor of coverage for the insured.

31. State Farm has pursued this course of conduct willfully and maliciously, with gross negligence and in reckless disregard for Atha Foster's rights. State Farm's motivation for attempting to deny coverage arose from its attempts to preserve profits rather than treat Atha Foster in good faith.

32.    State Farm's breach of its duty of good faith and fair dealing proximately caused Atha Foster's damages.

## DAMAGES

33.    Plaintiff incorporates by reference each allegation in Paragraphs 1 through 32 of this Complaint. Plaintiff requests that the Court award Plaintiff:

(a)    full payment of Atha Foster's property damage claim;

(b)    all other compensatory damages incurred by reason of State Farm's refusal to pay contractual benefits, including damages for mental distress, emotional harm, and other losses and damages suffered by Atha Foster as a result of State Farm's wrongful denial of coverage;

(c)    consequential damages, including but not limited to the amounts Atha Foster expended or lost in trying to subsist while waiting for State Farm to pay his claim;

(d)    punitive and exemplary damages for State Farm's tortious, malicious, willful, reckless, grossly negligent and bad faith conduct;

(e)    the maximum allowable pre- and post-judgment interest;

(f)    all appropriate fees and costs, including attorneys' fees to the maximum extent allowed by law; and

(g)    all such further relief as the Court may deem just and proper.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, James Barney Foster, as heir of Atha Foster and on behalf of the heirs of Atha Foster, sues and demands judgment against the Defendant, jointly and severally, in an amount in excess of jurisdictional limits of the court plus interest, including prejudgment interest and cost.

Respectfully Submitted,

_____
C. MAISON HEIDELBERG, MB #9559

OF COUNSEL:

MAISON HEIDELBERG P.A.
795 Woodlands Parkway, Suite 220
Ridgeland, Mississippi 39157
Phone No.    (601) 351-3333
Fax No.      (601) 956-2900
Attorney for James Barney Foster